# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
NOV 0 5 2019

MC

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One Black and Red Maxwest Nitro 5 Go cellular telephone in evidence bag A5841921

)
)
)
)
)
)

Case No.

**19MJ11344**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, which is incorporated by reference.

located in the     Southern     District of     California     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Transportation of illegal aliens |

The application is based on these facts:
See Affidavit of Border Patrol Agent Jeffrey Schwer, which is hereby inorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jeffrey Schwer, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/5/19

*Judge's signature*

City and state: El Centro, CA

Ruth Bermudez Montenegro, Magistrate Judge
*Printed name and title*

## **ATTACHMENT A-1**
PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black and Red Maxwest Nitro 5 Go cellular telephone
> Placed in evidence bag A5841921
> **(Target Device #1)**

**Target Device #1** is currently in the possession of the Indio Border Patrol Station, located at 45620 Commerce St, Indio, California.



## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices** for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of September 22, 2019, to October 22, 2019, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Jeffrey Schwer, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for search warrants to search the following electronic devices:

    a. Black and Red Maxwest Nitro 5 Go cellular telephone
       Placed in evidence bag A5841921
       (**Target Device #1**), described in Attachment A-1 (incorporated herein by reference)

    b. White SENWA S301 Cellular telephone
       Placed in evidence bag A4222623
       (**Target Device #2**), described in Attachment A-2 (incorporated herein by reference)

(collectively "**Target Devices**") seized from Francisco Javier GASCA-Ruiz or about October 21, 2019, incident to GASCA's arrest for violations of Title 8, United States Code, Section 1324, transportation of illegal aliens.

2. The **Target Devices** are currently in the custody of U.S. Border Patrol, Indio Border Patrol Station, located at 45620 Commerce St, Indio, California.

3. I seek authority to search the **Target Device** for evidence of crimes, specifically, violations of Title 8, United States Code, Section 1324, as described in Attachment B (incorporated herein by reference) for the time period from September 22, 2019, to October 22, 2019.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

1

## EXPERIENCE AND TRAINING

5. I am a United States Border Patrol Agent and have been so employed since 2004. I am currently assigned to the El Centro Sector El Centro Station, and I am currently a member of the El Centro Sector Prosecutions Unit. I am a graduate of the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Charleston, South Carolina and a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized by Rule 41(a) of the Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience in and have received training with respect to conducting investigations of violations of Titles 8, 18, 19, and 21 of the United States Code.

6. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

7. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers

2

and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

9. Based upon my training and experience as a BPA and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

 a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, voice messages, camera, internet, and various applications which can be used to aid them in their illicit activity.

 b. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the illegal aliens while they are in transit.

 c. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

 d. Alien smugglers will use cellular telephones to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens.

 e. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity, including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

 f. Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

 g. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to

3

emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

11. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

12. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle undocumented aliens into the United States from Mexico, and to transport or harbor undocumented aliens in the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services- such as email addresses, IP addresses, and phone numbers-used to facilitate the efforts to smuggle undocumented aliens into the United States from Mexico or transport or harbor undocumented aliens in the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling, transporting or harboring undocumented aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transporting or harboring undocumented aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

13. On October 21, 2019, Border Patrol Agent ("BPA") Martin was assigned to the Highway 86 Checkpoint located near Westmorland, California. At approximately 2:35 PM, BPA Martin received a phone call at the checkpoint from a nearby resident regarding possible illegal aliens in the desert near his residence. The concerned citizen stated he saw the San Diego Sheriff's Department towing a vehicle ("Vehicle") on Split Mountain Road near Ocotillo Wells, California. Split Mountain Road is in a remote area and it connects directly to a dirt road that leads from an area known as Plaster City. The significance of

5

traveling on this route is that it comes from the south and leads to Highway 78. This route circumvents the Border Patrol Checkpoint on Highway 86. As such it is used by smugglers to further their contraband into the United States hoping to avoid any contact with law enforcement. The citizen advised that he saw four individuals standing together on the side of the road, then watched as three of those people walked off the road into the brush to hide after the Vehicle was towed.

14. BPA Martin informed BPAs Broderick and Allen, who were performing roving patrol duties in the nearby desert, of the information from the phone call. Broderick and Allen responded to the location in question. BPA Allen observed one individual, later identified as Francisco Javier GASCA-Ruiz, alongside the road. BPA Allen identified himself as a BPA and questioned GASCA as to his citizenship. GASCA stated that he was a United States citizen. BPA Allen called sector dispatch and requested record checks. Agent Allen was informed that GASCA had multiple prior arrests for alien smuggling. He was also advised that GASCA is currently on supervised release for charges related to alien smuggling.

15. During this time, BPA Broderick searched the surrounding area. BPA Broderick encountered three individuals attempting to conceal themselves by lying down in a shaded area within a wash. BPA Broderick identified himself as a United States Border Patrol agent and questioned all three subjects, later identified as HERNANDEZ-Ramirez, MALDONADO-Prado, and MORENO-Sanchez. All subjects stated that they were citizens of Mexico without legal documentation to be, enter, work, or reside in the United States legally. They were placed under arrest. Based on the information from the concerned citizen, GASCA's prior arrests for alien smuggling, and GASCA's proximity in a remote, sparsely populated area to three illegal aliens hiding in the brush, BPA Allen arrested GASCA for violation of 8 U.S.C. § 1324 Alien Smuggling.

16. During the search incident to arrest of GASCA, BPA Allen discovered **Target Devices** in GASCA's front left pants pocket. GASCA claimed ownership of the **Target Devices**. The **Target Devices** were seized as evidence.

6

17. Post-arrest, the Material Witness HERNANDEZ-Ramirez stated he was going to pay $8,000 United States dollars to be smuggled into the United States. Material Witnesses HERNANDEZ-Ramirez and MORENO-Sanchez were able to identify GASCA from a six-pack photo lineup as the driver of the Vehicle.

18. The Material Witnesses all stated that they had entered the United States illegally by climbing over the border fence. Material Witnesses HERNANDEZ-Ramirez and MORENO-Sanchez further stated that they were transported by GASCA in a vehicle that got a flat tire. Both stated that the driver pulled onto private property and told others to get out of the Vehicle and hide.

19. According to MORENO-Sanchez, a Sheriff's Deputy arrived at their location and assisted GASCA in fixing the flat tire, but instructed him not to drive because GASCA did not have a valid driver license. MORENO-Sanchez stated that after the Sheriff's Deputy left, GASCA called the others from hiding and instructed them to get back into the Vehicle. Shortly after, the Vehicle was encountered by the Sheriff's Deputy, with GASCA driving. GASCA was cited and the Vehicle was towed. (During a search of GASCA's property, a traffic citation issued on October 21, 2019, at 1305, was found. The citation referenced GASCA's name and listed driving without a license and without proof of insurance as the violation.)

20. Material Witnesses HERNANDEZ-Ramirez and MORENO-Sanchez stated that after the Sheriff's Deputy had the Vehicle towed, GASCA told them to split up and hide while another ride came for them.

21. Based upon my experience and investigation in this case, I believe that GASCA and other persons, as-yet-unknown, were involved in an alien smuggling venture and that GASCA used the **Target Devices** to coordinate with the as-yet-unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and

7

other digital information are stored in the memory of the **Target Devices**, which may identify other persons involved in alien smuggling activities.

22. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the **Target Devices** for data beginning on September 22, 2019, up to and including October 22, 2019, the day after GASCA's arrest.

## METHODOLOGY

23. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record

8

the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, a case agent familiar with the investigation will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days absent further application to this Court.

## CONCLUSION

26. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that GASCA used the **Target Devices** to facilitate the offense of alien smuggling. The **Target Devices** likely were used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 8, United States Code, Section 1324.

27. There is also probable cause to believe that evidence of illegal activity committed by GASCA and others continues to exist on the **Target Devices**.

28. Based upon my experience and training, consultation with other agents in alien smuggling investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachments A-1 and A-2 (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, an Agent with United States Border Patrol, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items

described in Attachments A-1 and A-2, and seize the items listed in Attachment B. Therefore, I respectfully request that the Court issue this warrant.

        I swear the foregoing is true and correct to the best of my knowledge and belief.

                                              Jeffrey Schwer
                                              Border Patrol Agent
                                              U.S. Border Patrol

Subscribed and sworn to before me this 5th day of November 2019.

HON. RUTH BERMUDEZ MONTENEGRO
United States Magistrate Judge

10

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black and Red Maxwest Nitro 5 Go cellular telephone
    Placed in evidence bag A5841921
    **(Target Device #1)**

**Target Device #1** is currently in the possession of the Indio Border Patrol Station, located at 45620 Commerce St, Indio, California.



## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

> White SENWA S301 Cellular telephone
> Placed in evidence bag A4222623

**(Target Device #2)**

**Target Device #2** is currently in the possession of the Indio Border Patrol Station, located at 45620 Commerce St, Indio, California.



# ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices** for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of September 22, 2019, to October 22, 2019, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.